IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v<br><br>$21,175.00 IN UNITED STATES FUNDS,<br>    Defendant Property. | CASE NO. 4-11-cv-38 (CDL) |

## VERIFIED COMPLAINT FOR FORFEITURE

COMES NOW, Plaintiff, the United States of America, by and through its attorney, the United States Attorney for the Middle District of Georgia, brings this complaint and alleges as follows in accordance with Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure:

### *Nature of the Action*

1.      This is a civil action *in rem* brought pursuant to 21 U.S.C. § 881(a)(6), to forfeit and condemn to the use and benefit of the United States of America certain personal property, to wit: $21,175.00 in United States funds, (hereinafter "Defendant Property").

### *The Defendant in Rem*

2.      The Defendant Property consists of $21,175.00 in United States funds, that were seized from Terrance Devon Durr and Jerry Lamar Lett on October 30, 2010, on Interstate 185, in Hamilton, Harris County, Georgia.  It is presently in the custody of the United States Marshals Service and has been deposited into the Seized Asset Deposit Fund Account.

## Jurisdiction and Venue

3. Plaintiff brings this action *in rem* in its own right to forfeit the Defendant Property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the Defendant Property under 28 U.S.C. § 1355(b). Upon the filing of this complaint, the Plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the Plaintiff will execute upon the Defendant Property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5. Venue is proper in this District pursuant to 28 U.S.C. § 1395, because the Defendant Property was seized in Harris County, Georgia, which is a place within the Middle District of Georgia.

6. The seizure was adopted by the United States Department of Justice, Drug Enforcement Administration ("DEA"), which began administrative forfeiture proceedings. On or about January 13, 2011, Terrance Durr, through his counsel, Jackie Patterson, Esq., 2970 Peachtree Road, Suite 830, Atlanta, Georgia, 30305, filed a claim with the DEA, after which the DEA referred the matter to the United States Attorney for the Middle District of Georgia.

## *Basis For Forfeiture*

7. The Defendant Property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of the Controlled Substances Act; 2) proceeds traceable to such an exchange; and/or 3) money used or intended to be used to facilitate a violation of the Controlled Substances Act.

***Factual Allegations***

8.      On October 30, 2010, at approximately 7:37 a.m., Deputy Drew Crane, of the Harris County Sheriff's Office ("HCSO") stopped a white Chrysler Sebring for a traffic violation on Interstate 185 North near mile marker 20.

9.      Deputy Crane approached the passenger side of the vehicle to make contact with the driver, later identified as Jerry Lamar Lett ("Lett").

10.     Upon Lett rolling down the window, Deputy Crane detected a strong odor of alcohol and marijuana coming from inside the vehicle. Deputy Crane also observed a single key in the ignition of the vehicle.

11.     Deputy Crane asked Lett for his driver's license and proof of insurance. When Lett handed him his documentation, Deputy Crane observed that his hand was trembling.

12.     Deputy Crane also observed that the passenger, later identified as Terrance Devon Durr ("Durr"), appeared to be pretending that he was sleeping, and that he had a large bulge in his left front pant's pocket. Upon asking Durr for his driver's license, Deputy Crane observed that Durr then appeared to be completely awake and stated that he did not have one.

13.     Deputy Crane asked Lett to step out of the vehicle so that he could issue him a warning citation for failing to maintain his lane, and for a burnt out tag light. Lett and Durr looked at each other "bug eyed" before Lett exited the vehicle.

14.     While writing the warning citation, Deputy Crane asked Lett who the vehicle belonged to, and Lett stated that it belonged to his girlfriend's brother.

15. An inquiry made to the Georgia Crime Information Center revealed that the vehicle was registered to Cedric Deon Gude and Terry Williams, who were not present at the traffic stop.

16. When asked about his travel itinerary by Deputy Crane, Lett indicated that they were traveling to Sandy Springs, Georgia, to look at some houses, and had been on the road for approximately two to three hours.

17. Deputy Crane asked Lett if he was under any type of doctor's care, and Lett indicated that he was currently taking medication for pain.

18. When asked by Deputy Crane if Lett had been drinking, Lett laughed and stated that he had not, but Durr had been drinking. Lett further indicated that he had picked Durr up from a club.

19. Deputy Crane asked Lett if the medication he was taking made him drowsy and Lett stated that they did not.

20. Based on the strong odor of alcohol and marijuana, Deputy Crane asked Lett if there were any open containers or drugs inside the vehicle. Lett stated that there was not.

21. Deputy Crane asked for and received consent from Lett to search the vehicle.

22. Based on Deputy Crane's previous observation of something protruding from Durr's front left pant's pocket, Deputy Crane asked and received consent from him to search his person.

23. A search of Durr's person revealed a large amount of United States currency in his front left pant's pocket. Durr indicated to Deputy Crane that he had been at the Play Boy strip club located in Dothan, Alabama, all night.

24.     Deputy Crane asked Durr if he had any more currency, and Durr indicated that he did not.

25.     Deputy Chris Gillilands and Sergeant David Stanford of the HCSO arrived at the scene to provide assistance.

26.     A search of the vehicle revealed a blue and white plastic bag under the front passenger seat which contained a large amount of United States currency.  The currency was wrapped in colored rubber bands.

27.     After being asked several times by Deputy Crane who the currency belonged to, Lett motioned towards Durr indicating that it belonged to him.

28.     When Deputy Crane asked Durr if the currency belonged to him, Durr initially hesitated and eventually stated that it did.  Durr further indicated that the currency belonged to him, his father, and his grandmother.

29.     Deputy Crane asked Durr if the currency was bundled in thousand dollar increments, and Durr stated that it was.

30.     When asked by Deputy Crane about their travel itinerary, Durr indicated that they were traveling to Atlanta, Georgia.

31.     When asked by Deputy Crane if they were employed, Lett stated that he was not, and Durr stated that he had been working for Budweiser for the last eight years.

32.     A criminal history records check revealed that both Lett and Durr have had prior arrests and convictions for narcotics violations.

33.     The Defendant Property was seized for a total amount of $21,175.00.

34.     Lett and Durr followed the officers to the HCSO, and received a receipt for the seized currency.

35.     At the HCSO, Deputy Dwight Duke utilized a dog, trained to detect the odor of certain controlled substances, ("K-9") to conduct a sweep of the vehicle and seized currency. The K-9 gave a positive alert to an odor of illegal narcotics on the vehicle and currency.

### *Conclusion*

36.     Based on the foregoing, probable cause exists to believe that the Defendant Property constitutes money furnished or intended to be furnished in exchange for a controlled substance, in violation of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, punishable by more than one year's imprisonment, constitutes proceeds traceable to such an exchange, and/or constitutes money used or intended to be used to facilitate a violation of the Controlled Substances Act, and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America prays that process of warrant issue for the arrest of the Defendant Property; that due notice be given to all parties to appear and show cause why forfeiture should not be decreed; that judgment be entered declaring the Defendant Property forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

RESPECTFULLY SUBMITTED, April 13, 2011.

                        MICHAEL J. MOORE
                        UNITED STATES ATTORNEY


        By:    s/ DANIAL E. BENNETT
              ASSISTANT UNITED STATES ATTORNEY
              GEORGIA STATE BAR NO.  052683
              UNITED STATES ATTORNEY'S OFFICE
              Post Office Box 1702
              Macon, Georgia 31202-1702
              Telephone: (478) 752-3511
              Facsimile: (478) 621-2712