IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,      : | |
|     Plaintiff,      : | |
| : | CASE NO.: 4:11-CV-38 (CDL) |
| v.      : | |
| : | |
| $21,175.00 IN UNITED STATES      : | |
| FUNDS,      : | |
|     Defendant Property,      : | |
| : | |
| TERRANCE DURR,      : | |
|     Claimant.      : | |

## UNITED STATES OF AMERICA'S MEMORANDUM OF LAW IN OPPOSITION TO CLAIMANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, the United States of America, Plaintiff, by and through the United States Attorney for the Middle District of Georgia, and hereby opposes and responds to the motion for summary judgment filed by Terrance Durr, through his counsel, Dustin J. Fowler:

### I.   BACKGROUND AND PROCEDURAL HISTORY

This action arose out of the seizure of $21,175.00 in United States currency on October 30, 2010, during a traffic stop on Interstate 185 in Hamilton, Harris County, Georgia. (Doc. 1, ¶ 2.) Harris County Sheriff's Office ("HCSO") Deputy Drew Crane stopped the Chrysler Sebring, in which Terrance Durr was a passenger, for failure to maintain ahis lane and a burned out tag light. (Doc. 1, ¶ 8; Aff. Crane, ¶ 4.) During the

stop, Deputy Crane detected a strong odor of alcohol and marijuana coming from the vehicle. (Doc. 1, ¶ 10.) His subsequent search of the car recovered $21,175.00 in cash wrapped in a plastic bag under the front passenger seat. (Doc. 1, ¶ 26.)

On April 13, 2011, the Government filed this civil forfeiture action against the Defendant Property, alleging that it is subject to forfeiture pursuant to 18 U.S.C. § 881(a)(6). (Doc. 1.) The Defendant Property was arrested and seized pursuant to a Warrant of Arrest In Rem by the United States Marshals Service. (Doc. 2.) The Process Receipt and Return was filed with the Court on April 18, 2011. (Doc. 4.) The Government published notice of this forfeiture, as required by Rule G(4) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. A Declaration of Publication was filed herein on June 8, 2011, specifying the details of the Internet publication. (Doc. 7.) On June 3, 2011, Mr. Durr, through his counsel of record, filed a timely Claim to the Verified Complaint for Forfeiture in this action, asserting his interest in the Defendant Property, as well as an Answer to the Complaint. (Doc. 5.)

Discovery took place pursuant to the Court's Scheduling and Discovery Order entered on July 18, 2011, (Doc. 8), and Order Granting Motion for Extension of Time for Discovery, entered on October 20, 2011. The parties propounded Interrogatories and Requests for Production of Documents on one another. The undersigned took the deposition of Mr. Durr, and the Claimant took the deposition of HCSO Deputy Crane.

Mr. Durr filed with this Court a Motion for Summary Judgment on January 19, 2012, which for the reasons stated below, the Government now opposes.

## II.     STATEMENT OF THE FACTS

The facts that Claimant Durr alleges as material and undisputed are each addressed by the Government in a separate document filed in conjunction with the Government's Response and Memorandum of Law in Opposition to Claimant Durr's Motion for Summary Judgment.

## III.    THE SUMMARY JUDGMENT STANDARD

The Court may grant summary judgment only if the moving party "shows that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2510 (1986). The party that seeks summary judgment bears the initial burden of informing the district court of the basis for its motion and indicating those aspects of the pleadings, depositions, answers to interrogatories, admissions, and affidavits that show an absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). For there to be no genuine dispute as to a material fact, the evidence must be so slight that a reasonable jury could not return a verdict for the nonmoving party; indeed, there must be so little evidence that reasonable minds could not differ as to this result. *Anderson*, 477 U.S. at 249-52. Additionally, a dispute is not genuine if it is unsupported by competent evidence or if it

is created by evidence that is merely "colorable" or is "not significantly probative." Id. at 249-50 (citations omitted).

The non-moving party may survive a motion for summary judgment by coming "forward with sufficient evidence on each element that must be proved." *Kee v. National Reserve Life Ins. Co.*, 918 F.2d 1538, 1543 (11th Cir. 1990) (emphasis in original; citation omitted). Importantly, during the summary judgment stage a determination of the relevant facts must be made, and all inferences must be drawn in favor of the opposing party "to the extent supportable by the record." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007).

## IV.  ARGUMENT AND CITATION OF AUTHORITY

Mr. Durr has not presented any undisputed material facts that would suggest he is entitled to judgment as a matter of law. On the contrary, the facts in their totality are highly probative of a substantial connection between the Defendant Property and illegal drug activity: the odor of narcotics detected on the currency and car; Mr. Durr's drug-related criminal history, coupled with his associate's prior drug conviction; the amount of currency Mr. Durr was transporting and the manner in which it was bundled; his inconsistent statements and suspicious roadside behavior. Indeed, Mr. Durr has not even provided a legitimate source for the Defendant Property or plausible purpose for transporting it. With all of these facts aligned in opposition to Mr. Durr's claim, summary judgment cannot be granted in his favor.

### A. The totality of the circumstances reveals a nexus between the Defendant Property and illegal drug activity, precluding summary judgment for the claimant.

In a civil forfeiture action, the Government must show by a preponderance of the evidence that the funds it seized were furnished or intended to be furnished in exchange for a controlled substance or are proceeds traceable to such a transaction. *See* 18 U.S.C. §§ 881(a)(6), 983(c)(1). However, the Government is not required to prove "a relationship between the property and a particular drug transaction—only that the property was related to *some* illegal drug transaction." *United States v. $242,484.00*, 389 F.3d 1149, 1160 (11th Cir. 2004) (en banc) (emphasis added). The Government may meet this burden by relying on circumstantial evidence as well as evidence gathered during the follow up investigation to the seizure. *Id.; see also* 18 U.S.C. § 983(c)(2) (providing for the use of evidence obtained after the filing of the complaint). When evaluating the evidence, the Court should take "a common sense view to the realities of normal life applied to the totality of the circumstances." *Id.*

Numerous factors in this case show a substantial connection between the Defendant Property and illegal drug activity. First, a dog trained to detect the odor of various controlled substances ("K-9 Cierra") gave a positive alert to the odor of illegal drugs on both the vehicle in which Mr. Durr was riding and on the currency. (Doc. 1, ¶ 35; Aff. Duke ¶¶ 6-7.) When four brown paper bags, one of which contained the Defendant Property, were placed in a row, K-9 Cierra gave a positive response to the odor of narcotics on the bag containing the Defendant Property. (Doc. 1, ¶ 35; Aff.

5

Duke, ¶¶ 5-6.) Additionally, K-9 Cierra gave a positive response for the odor of narcotics during a free air sniff of the vehicle. (Doc. 1, ¶ 35; Aff. Duke, ¶ 7.) The detection of the odor of drugs on the Defendant Property and the vehicle indicates that the money had been in recent contact with narcotics. *See $242,484.00*, 389 F.3d at 1166.

Second, Mr. Durr has a prior record of trafficking drugs. Specifically, he was convicted in 1996 of Conspiracy to Possess with Intent to Distribute Cocaine and incarcerated in a federal prison, before being released in 2003. (Durr Depo. 6:18-25, 7:1-10.) Mr. Durr's narcotics related criminal history is probative of a substantial connection between the Defendant Property and narcotics activity. *United States v. $52,000, More or Less, in U.S. Currency*, 508 F. Supp.2d 1036, 1042 (S.D. Ala. 2007); *United States v. U.S. Currency Totaling $101,207.00*, No. 1:01-CV-162, 2007 WL 4106262, at *6 (S.D. Ga. Nov. 16, 2007). What's more, the driver, Jerry Lamar Lett, also has a narcotics related history: he was arrested in Alabama in 1999 for cocaine trafficking, and in Georgia in 2000, he was convicted of cocaine possession.

Third, Mr. Durr was transporting a large amount of currency – $21,175.00 cash in a plastic bag stashed under the front passenger seat. (Doc. 1, ¶ 26; Aff. Crane, ¶¶ 14, 22.) This money, supposedly his life savings, was bundled in $1,000 increments and wrapped in colored rubber bands. (Doc. 1, ¶¶ 26, 29; Aff. Crane, ¶ 14; Durr Depo. 28:1-7, 35:15-25, 36:1-4.) The fact that Mr. Durr was transporting such a hefty amount of cash is "highly probative of a connection to some illegal activity," as "drug rings … often utilize couriers to transport large amounts of cash in rubber-banded bundles." *United States v. $183,791.00*, 391 Fed. Appx. 791, 795 (11th Cir. 2010) (quoting *United States v.*

*121,100.00 in U.S. Currency*, 999 F.2d 1503, 1507 (11th Cir. 1993); *$242.484.00*, 389 F.3d at 1161-62) (internal quotation marks removed)); *see also* Aff. Crane, ¶ 14.

Fourth, Mr. Durr and his driver, Mr. Lett, made several inconsistent statements to Deputy Crane during the traffic stop and engaged in suspicious roadside conduct. This too is probative of a substantial connection between the seized funds and narcotics activity. *See $242,484.00*, 389 F.3d at 1164. When Deputy Crane first asked Mr. Durr if he had any more money than what was found on his person, Durr indicated that he did not. (Doc. 1, ¶ 24; Aff. Crane, ¶ 13.) A subsequent vehicle search, however, revealed Mr. Durr had failed to disclose the additional money when the Defendant Property was found beneath the front passenger seat in which he was riding. (Doc. 1, ¶ 26; Aff. Crane, ¶ 14.) Even then, Mr. Durr did not immediately assert that the money was his, admitting to ownership only after repeated questioning. (Doc. 1, ¶¶ 27-28; Aff. Crane, ¶¶ 15-16.) Additionally, Mr. Durr and his driver, Mr. Lett, gave different accounts as to their purported destination: Lett said they were traveling to Sandy Springs, Georgia, while Durr said they were going to Atlanta, Georgia. (Doc. 1, ¶¶ 16, 30; Aff. Crane, ¶¶ 9, 17.) Mr. Durr further engaged in curious behavior: When Deputy Crane first approached the car, he pretended to be asleep even though he was apparently wide awake, (Doc. 1, ¶ 12), and Mr. Durr and Mr. Lett stared at each other "bug eyed" when asked to exit the vehicle. (Doc. 1, ¶ 13; Aff. Crane, ¶ 8.)

### B.    The Claimant Durr has not provided a legitimate source for the Defendant Property.

Finally, Mr. Durr has not established a legitimate source for the Defendant Property. The lack of such a source further suggests a connection between the funds and narcotics activity. *United States v. $80,633.00 in U.S. Currency*, No. 2:05-CV-1086-WKW, 2008 WL 1808328, at *6 (M.D. Ala. Apr. 21, 2008) (finding the most persuasive factor to be the overwhelming lack of evidence of a legitimate source), *aff'd by* 340 Fed. Appx. 579 (11th Cir. 2009); *$52,000*, 508 F. Supp.2d at 1042 ("In civil forfeiture cases, the absence of an apparent, verifiable, or legitimate source of substantial income is probative evidence of a substantial connection to illegal activity.").

Mr. Durr contends that the Defendant Property is money that he saved over the years from working as a draft technician at a beverage distributor, where he earned at most, $32,000 per year, plus a $4,500 bank loan and a $5,000 cash loan from his father. (Durr Depo. 11:24-12:12, 13:17-14:7, 29:16-30:15.) However, he has provided no bank documentation to show bank withdrawals or the existence of a bank loan, nor has he provided an affidavit or testimony from his father regarding the cash loan. It further strains credulity to believe that, after receiving his paycheck via direct deposit into his checking account, Durr depo. 15:8-18, Mr. Durr would systematically withdraw money so that he could keep it unsecured in his grandmother's closet or beneath her bed, particularly when he knew that his grandmother's house was a target for robbery. (Durr Depo. 30:24-31:23.)

Moreover, the story Mr. Durr presents is riddled with inconsistencies, further undermining the claimed legitimacy of the forfeited money. Mr. Durr says he intended to go to Atlanta to "get some houses out of foreclosure." (Durr Depo. 18:13-17.) Yet despite owning homes in Atlanta, he is "not really familiar with the Atlanta area," Durr Depo. 21:14-15, and does not know whom he purchased the homes from. (Durr Depo. 37:9-11.) Further, he claims to be a disciplined money saver, but his late night at an Alabama strip club, Durr depo. 17:4-5, coupled with the fact that he had stuffed $700 cash into his pockets for a night on the town in Atlanta, Durr depo. 22:24-23:1, seem to contradict this notion. Even more puzzling is how Mr. Durr planned to transact his purported business: During the traffic stop, he told Deputy Crane he had no identification with him.[1] (Doc. 1, ¶ 12; Aff. Crane, ¶ 7). What's more, he would have the Court believe that he took his life savings, put it in a plastic bag, and embarked on a 200 mile journey to an unfamiliar place without ever making an appointment to meet with any bank official. (Durr Depo. 34:24-35:19.) This simply does not add up.

## V.   CONCLUSION

The Claimant has not offered any material fact that is not in dispute. Therefore, summary judgment is inappropriate. The Government respectfully requests that the Claimant's Motion for Summary Judgment be denied.

---

[1] More than a year later, the Claimant's story inexplicably changed. During his deposition, the Claimant admits initially that he had no identification with him. (Durr Depo. 26:3-6.) Then, under questioning, he says, "You know what? I had an old, old driver's license, but I told the officer my license was suspended, but it's an old ID, like – because it wasn't – it wasn't, you know, accurate, so – yeah, it was an old ID." (Durr Depo. 26:14-18.)

Dated this February 8th, 2012.

        MICHAEL J. MOORE
        UNITED STATES ATTORNEY


By:   s/DANIAL E. BENNETT
       ASSISTANT UNITED STATES ATTORNEY
       GEORGIA STATE BAR NO. 052683
       United States Attorney's Office
       Post Office Box 1702
       Macon, Georgia 31202-1702
       Telephone: (478) 752-3511
       Facsimile: (478) 621-2712