IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

UNITED STATES OF AMERICA,      :
        Plaintiff,      :
                        :     CASE NO. 4-11-CV-38 (CDL)
    v.                  :
                        :
$21,175.00 IN UNITED STATES    :
FUNDS,                     :
      Defendant Property    :
                        :
TERRANCE DURR,         :
        Claimant.       :

## AFFIDAVIT OF DREW CRANE

I, Drew Crane, being first duly sworn on oath, hereby declare and state:

1.     I am employed as a Deputy Sheriff with the Harris County Sheriff's Office (HCSO) and have been so employed for approximately sixteen months. I have approximately thirteen years of law enforcement experience and six years of military law enforcement experience. I also have been a K-9 handler for approximately nine years. I have received training from Desert Snow, Interview and Interrogations, Internal Affairs, K-9 Concepts and Drugs that Impair.

2.     The facts set forth below are based on my training, knowledge, experience and totality of the circumstances.

3.     As part of my duties, I am required to enforce state and criminal laws such as violation of the Georgia Controlled Substance Act and other misdemeanor and

felony violations. Through my training and experience, I am familiar with the ways and means of narcotics and currency trafficking and smuggling in the United States, specifically in Georgia.

4.      On October 30, 2010, I was conducting traffic enforcement on Interstate 185. I observed a white in color Chrysler Sebring having difficulty maintaining a single lane. I also noted the vehicle had a burned out tag light. I activated my emergency lights and stopped the vehicle on the northbound shoulder of Interstate 185 near milepost 20.

5.      I made contact with the driver from the passenger side to explain the stop. When the driver rolled down the window, I smelled a strong odor of alcohol and marijuana emitting from within the vehicle.

6.      I asked the driver, identified as Jerry Lett, for his license and proof of insurance. I noted Mr. Lett's hand trembling as he handed me the documents I had requested. I also noted a single key in the ignition and a large bulge in the passenger's left front pocket.

7.      I asked the passenger for his license. The passenger, identified as Terrance Devon Durr, stated he did not have a license.  A check through the Georgia Crime Information Center revealed that the vehicle was registered to a third party who was not present at the time of the stop.

8.      I asked Mr. Lett to exit the vehicle while I filled out a warning citation. Mr. Lett and Mr. Durr stared bug eyed at each other, then exited.

9.      While filling out the citation, I asked Mr. Lett who owned the vehicle. Mr. Lett explained the vehicle belonged to his girlfriend's brother. I asked Mr. Lett where he

was traveling. Mr. Lett stated he and Mr. Durr were headed to Sandy Springs to look at some houses. Mr. Lett said they had been on the road for two or three hours.

10.     I asked Mr. Lett if he was under a doctor's care. Mr. Lett explained he was currently taking medication for pain. I asked him if he had had anything to drink. Lett laughed and said he had not, but Mr. Durr had. Mr. Lett said he had picked Mr. Durr up from a club. I asked Mr. Lett if the medication made him drowsy.  He said it did not.

11.     During my contact with Mr. Lett, it became very clear to me that he had a high level of anxiety from being engaged in criminal activity. I asked for his consent to search the vehicle based on the odor of alcohol and marijuana. Mr. Lett gave his free and voluntary consent both verbally and in writing.

12.     When backup arrived, I made contact with the passenger, Mr. Durr, and asked for consent to search his pockets based on the large bulge in his left front pocket. Durr gave his free and voluntary consent.

13.     The search revealed a large bundle of money located in the front left pocket. Mr. Durr explained that he had been at the Play Boy Strip Club all night in Dothan, Alabama. I asked Mr. Durr if he had any more money. He said he did not.

14.     A subsequent search of the vehicle revealed a blue and white plastic bag containing several bundles of money wrapped in multi-colored rubberbands. The packaging and denominations were consistent with drug proceeds. The bag of money was located under Mr. Durr's seat.

15.   I asked who the money belonged to and received no response.  After asking Mr. Lett and Mr. Durr several times, Mr. Lett said the money was his, motioning towards Mr. Durr.

16.   I asked Mr. Durr if the money belonged to him. Mr. Durr hesitated and finally said that it did. Additionally, Mr. Durr said the money also belonged to his father and grandmother.

17.   Mr. Durr said he and Mr. Lett were headed to the city of Atlanta. This was inconsistent with Mr. Lett's previous statement that their destination was Sandy Springs.

18.   Mr. Lett denied any ownership of the money and signed a voluntary disclaimer of interest and ownership on the roadside.

19.   Based on the totality of the circumstances revealed during the traffic stop – the odor of alcohol and marijuana; the third-party, single-key vehicle without the owner present; the itinerary discrepancy; the nervousness of the driver; Mr. Durr being asked several times if he was the owner of the money and only indicating ownership after Mr. Lett singled Mr. Durr out on the roadside; packaging and denominations that were consistent with drug proceeds; and finally Mr. Durr explaining he had previously been arrested for marijuana conspiracy – the currency was transported to the HCSO for further investigation.

20.   The findings and behavior at this traffic stop were not consistent with innocent motoring public. Additionally, it was later discovered that Durr lied about

being arrested for marijuana conspiracy. He had, in fact, been arrested for cocaine conspiracy.

21.    Deputy Dwight Duke conducted a free air sniff with his K-9, Cierra, a dog trained to detect the odor of narcotics, who showed a positive odor response for drugs on both the vehicle and the money.

22.    A count of the money was conducted totaling $21,175.00.  An inquiry through the GCIC revealed both Mr. Lett and Mr. Durr had previous drug charges on their criminal histories.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


Drew Crane, Deputy
Harris County Sheriff's Office


Sworn and subscribed before me
This    3    day of February, 2012


Notary Public:
My commission expires

My Commission Expires Feb. 8th, 2015

2-3-2012