

April 20, 2007

Terrance Durr
1306 FAIRLANE DR
DOTHAN, AL 36301

Re: Deed of Trust

Dear Terrance Durr,

This letter is in reference to your loan, account number, 68318001853899/ Acaps # 995070670856510 with Bank of America that was opened on March 15, 2007.

A recent review of our files revealed the county has not recorded the original Security Deed document, signed by you in conjunction with your loan. An investigation revealed that the county recorder's office has rejected your documents due to the signature page has hightlighter mark on it. As a result, we would like to ask you to re-execute your documents.

Enclosed you will find the Security Deed. This document needs your signature as well as a notary acknowledgement and witnesses, if applicable. We kindly request that you take this document to the nearest Bank of America banking center and a Personal Banker will assist you in completing it. Please return the completed document to me in the enclosed envelope by May 4, 2007. This is an urgent matter and a delay in the re-execution of this document will result in the reclassification of your loan to an "unsecured/blocked" status and Internal Revenue Service reporting of mortgage interest paid (form 1098) will be terminated. For your convenience, you may contact me at 1-877-227-7070 extension 71834 during the hours of 8:00am and 4:00pm EST, if you have any questions or concerns, a Bank of America representative will return your call.

Thank you for choosing Bank of America for your mortgage loan needs. We appreciate your business as a Bank of America customer, and apologize for any inconvenience this may cause.

Thank you for your cooperation and assistance in correcting this error.

Sincerely,

Traci Albanna
Bank of America
Collateral Tracking
Mail code FL9-700-04-22
9000 Southside Boulevard
Jacksonville, FL 32256



# STITES & HARBISON PLLC
### A T T O R N E Y S



DEFENDANT'S
EXHIBIT
5

11 Mountain Street
Suite 8
Blue Ridge, GA 30513
(706) 632-7923
(706) 632-7902 FAX
www.stites.com

July 17, 2009

L. Lou Allen
llallen@stites.com

<u>Via U.S. Mail Delivery</u>
Via Certified Mail Delivery
Return Receipt Requested

Terrance Durr                          Terrance Durr
1306 Fairlane Drive                    523 Griffin Street NW
Dothan, AL 36301                       Atlanta, GA 30318

RE:     **Default of Note and Security Deed –**
        **Borrower:**            Terrance Durr
        **Account No:**          68318001853899
        **Property Address:**    523 Griffin Street NW, Atlanta, Fulton County, GA 30318
        **Lender:**              Bank of America, N.A.
        **Lender Address:**      4161 Piedmont Parkway, Greensboro, NC 27410
        **Lender Telephone:**    (800) 936-6362
        **S&H File No.:**        6970A-00782

Dear Mr. Durr:

We represent Bank of America, N. A. (hereinafter referred to as "Lender"), which has forwarded your delinquent account with them to us for collection. In accordance with the covenants, terms, and provisions contained in the documents and with applicable laws and regulations, you are hereby notified as follows:

That certain Promissory Note ("Note") made by Terrance Durr on March 15, 2007, in the original principal sum of $66,000.00, is now in default; and the Lender, the present holder of said Note, has elected to accelerate the indebtedness evidenced by the Note in accordance with the terms and provisions thereof, and pursuant to that certain Deed To Secure Debt ("Security Deed") of even date therewith executed by Terrance Durr, in favor of Lender. The aforesaid Note and Security Deed are in default as a result of breach(es) in the terms of the loan documents, including, but not limited to, the nonpayment of monthly installments, as more fully set forth in previous communications from Lender to you.

The total outstanding principal balance, all accrued interest, escrows, default interest, late fees and other charges, if any, presently total $71,222.23, as of the date of this letter. You are advised that additional interest in the daily amount of $6.9677 and other charges will continue to accrue each day if the loan is not paid in full.

## STITES & HARBISON PLLC
### ATTORNEYS

**July 17, 2009**
Page 2

The debt described in this letter will be assumed to be valid by this law firm, unless you dispute in writing, within thirty (30) days after receipt of this notice, the validity of the debt or some portion thereof.

If you notify this law firm in writing within thirty (30) days of your receipt of this notice that the debt or any portion thereof is disputed, then we will obtain a verification of the debt and will mail it to you.

If the creditor named in the first paragraph of this letter is not the original creditor, and if you make a written request to this law firm within thirty (30) days of receipt of this notice, then the name and address of the original creditor will be mailed to you by this law firm.

You are further advised that Lender intends to seek all available legal remedies against you, including, but not limited to, the exercise of the power of sale contained in the loan documents. Notwithstanding anything contained herein to the contrary, this letter does not prevent this law firm from pursuing the collection activities referenced above during the thirty (30) day period.

**Please be advised that if you have received a discharge in a Chapter 7 bankruptcy case, your personal liability on this loan may have been extinguished. In that event, the action we have been requested to take would be limited to the foreclosure on the above-reference property.**

Please direct any correspondence or inquiries concerning this matter to the attention of Molly Delatte, in the office of the undersigned.

**THIS LAW FIRM IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Sincerely,

L. Lou Allen

LLA/mrd

Nm:ANGELA WHITE(11532*3), Rg:61,1

HEr 19 07 10:29a                                    4046342248                          p.3



**DEFENDANT'S EXHIBIT**
_6_

Deed Book 44662 Pg  400
Filed and Recorded Mar-19-2007 03:47pm
2007-0082013
Real Estate Transfer Tax $0.00
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

### WARRANTY DEED

STATES OF GEORGIA
COUNTY OF DEKALB

THIS INDENTURE, made this 19th day of MARCH in the year TWO THOUSAND SEVEN (2007), between ALICIA BURNETT as party of the first part, hereinafter call GRANTOR, and TERRANCE DURR as GRANTEE (the words (GRANTOR) AND (GRANTEE) to include their respective heirs, successors and assigns where the context requires permits)

WITNESSETH that: GRANTOR, for and in consideration of the sum of TEN DOLLARS AND NO/100 (10.00) in hand paid at and before the scaling and delivery of these presents, the receipt whereof is hereby acknowledge, has granted, bargained, sold, aligned, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said GRANTEE,

### SEE EXIBIT 'A' ATTACHED HERETO

TO HAVE AND TO HOLD the said tract or parcel of land with all singular rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said GRANTEE forever in FEE SIMPLE.

AND THE SAID GRANTOR will warrant and forever defend the right and title to the above described property unto the said GRANTEE against the claims of all persons, whomsoever.

IN WITNESS WHEREOF, the GRANTOR has signed and sealed this deed, the day and year above written.

Signed, sealed and delivered
In the presence of

_____
Witness

_____
ALICIA BURNETT

_____
Notary Public

05-05-2004 10:09   HOUSE                                                      PAGE3

PAGE13                    Fryer, Harris, Ingram & Barrett - NTG                    HOUSE   10:24  05-05-2004

EXHIBIT "A"

LEGAL DESCRIPTION

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN THE CITY OF
ATLANTA IN LAND LOT 111 OF THE 14TH LAND DISTRICT OF FULTON
COUNTY, GEORGIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EAST SIDE OF GRIFFIN STREET TWENTY-
NINE AND FOUR TENTHS FEET SOUTH FROM THE SOUTHEAST CORNER OF
GRIFFIN STREET AND MELDRUM STREET; THENCE EAST ONE HUNDRED (100)
FEET TO A TEN (10) FOOT ALLEY; THENCE SOUTH ALONG THE WEST SIDE
OF SAID ALLEY TWENTY NINE AND FOUR TENTHS (29.4) FEET; THENCE
WEST ONE HUNDRED (100) FEET TO GRIFFIN STREET; THENCE NORTH ALONG
THE EAST SIDE OF GRIFFIN STREET TWENTY NINE AND FOUR TENTHS
(29.4) FEET TO THE POINT OF BEGINNING; BEING IMPROVED PROPERTY
KNOWN AS NO. 523 GRIFFIN STREET, N.W., ACCORDING TO THE PRESENT
NUMBERING OF HOUSES IN THE CITY OF ATLANTA, GEORGIA, BEING THE
SAME PROPERTY CONVEYED BY DEED RECORDED IN DEED BOOK 24189, PAGE
118, FULTON COUNTY, GEORGIA RECORDS.

Deed Book 44662 Pg  401
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

Nr. ANGELA WHITE(11532^3), Rq:62.1

Deed Book 45357 Pg. 160
Filed and Recorded Jul-12-2007 08:31am
2007-0203141
Georgia Intangible Tax Paid $298.98
**Cathelene Robinson**
Clerk of Superior Court
Fulton County, Georgia

**Record and Return To:**
Fiserv Lending Solutions
27 Inwood Road
ROCKY HILL, CT 06067

Durr, Terrance

Loan Number: 68318001853899

Bank of America
9000 Southside Blvd
Jacksonville, FL 32256

*prepared by: Debbie Barbero*   [Space Above This Line For Recording Data]

# SECURITY DEED

## DEFINITIONS

**(A)  "Security Instrument"** means this document, which is dated  MARCH 15, 2007          , together
with all Riders to this document.
**(B)  "Borrower"** is  TERRANCE DURR


the party or parties who have signed this Security Instrument.
Borrower is the grantor under this Security Instrument.
**(C)  "Lender"** is  Bank of America, NA

Lender is a  National Banking Association                                        organized
and existing under the laws of  THE UNITED STATES OF AMERICA
Lender's address is     100 North Tryon Street, Charlotte, North Carolina
28255
Lender is the grantee under this Security Instrument.
**(D)  "Agreement"** means the Home Equity Line of Credit Agreement signed by the Borrowers.
**(E)  "Account"** means the Home Equity Line of Credit Account pursuant to which the Lender makes Advances to
the Borrower at the Borrower's direction, allowing the Borrower to repay those Advances and take additional
Advances, subject to the terms of the Agreement.
**(F)  "Credit Limit"** means the maximum aggregate amount of principal that may be secured by this Security
Instrument at any one time.  The Credit Limit is  $66,000.00                . Except to the extent
prohibited by Applicable Law, the Credit Limit does not apply to interest, Finance Charges, and other fees and
charges validly incurred by Borrower under the Agreement and this Security Instrument.  The Credit Limit also does
not apply to other advances made under the terms of this Security Instrument to protect Lender's security and to
perform any of the covenants contained in this Security Instrument.
**(G)  "Account Balance"** is the total unpaid principal of the Account, plus earned but unpaid Finance Charges,
outstanding fees, charges, and costs.
**(H)  "Maturity Date"** is the date on which the entire Account Balance under the Agreement is due.  The entire
Account Balance on your Account, as defined in the Agreement and this Security Instrument, is due on
MARCH 15, 2032
**(I)  "Property"** means the Property that is described below under the heading "Transfer of Rights in the Property."

TERRANCE DURR/995070670856510

GEORGIA HOME EQUITY LINE OF CREDIT SECURITY DEED
GAHESI.HLC  10/06/06                           Page 1 of 12                    DocMagic *eFormns* 800-649-1362
                                                                              www.docmagic.com

Deed Book **45357** Pg **161**

(J) "**Secured Debt**" means:

    (1) All amounts due under your Account, including principal, interest, Finance Charges, and other fees, charges, and costs incurred under the terms of this Security Instrument and all extensions, modifications, substitutions or renewals thereof.

    (2) Any advances made and expenses incurred by Lender under the terms of this Security Instrument.

(K) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ 1-4 Family | ☐ Condominium Rider | ☐ Escrow Rider |
| ☐ Second Home | ☐ Planned Unit Development Rider | ☐ Mortgage Insurance Rider |
| ☐ Other(s) | | |

(L) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(M) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(N) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(O) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(P) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Agreement and/or this Security Instrument.

(Q) "**Approved Prior Loan**" means a lien which is and which lender acknowledges and agrees will continue to have priority over the lien created by this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the

        COUNTY        of        FULTON

      [Type of Recording Jurisdiction]                  [Name of Recording Jurisdiction]

SCHEDULE A ATTACHED HERETO AND MADE A PART OF.

TERRANCE DURR/995070670856510

GEORGIA HOME EQUITY LINE OF CREDIT SECURITY DEED
GAHESI.HLC 10/06/06            Page 2 of 12                  DocMagic eForms 800-649-1362
www.docmagic.com

Deed Book **45357** Pg **162**

which currently has the address of     '523 GRIFFIN ST NW

[Street]

ATLANTA             GEORGIA                   ·303186815        ("Property Address"):

[City]                [State]                      [Zip Code]

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

ADVANCES.  During the Draw Period described in the Agreement, the Borrower may repeatedly take and repay any advances that Lender makes to Borrower under the terms of the Agreement and this Security Instrument, subject to the terms that the Agreement and this Security Instrument impose. The Agreement and this Security Instrument will remain in full force and effect notwithstanding that the Account Balance under the Agreement may occasionally be reduced to an amount of equal to or less than zero.

Any amounts that Lender advances to Borrower in excess of the Credit Limit will be secured by the terms of this Security Instrument unless applicable law prohibits the same. Lender shall not be obligated to increase the Credit Limit formally or to make additional Advances in excess of the Credit Limit stated in the Agreement even though the Credit Limit has been exceeded one or more times. The Draw Period may or may not be followed by a Repayment Period, as described in the Agreement, during which additional Advances are not available. During both the Draw Period and the Repayment Period the Lender may, at its option, make Advances from the Account to pay fees, charges, or credit insurance premiums due under the Agreement or this Security Instrument, or make other Advances as allowed by this Security Instrument.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.**     Borrower and Lender covenant and agree as follows:

1.     **Payment of Secured Debt.** Borrower shall pay when due all Secured Debt in accordance with the Agreement and this Security Instrument. All payments shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Agreement or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Agreement or Security Instrument be by a method of Lender's choosing.  These methods include, but are not limited to:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Billing Statement or at such other location as may be designated by Lender in accordance with the notice provisions provided in  Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Account current.  Lender may accept any payment or partial payment insufficient to bring the Account current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future., No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Agreement and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.     **Application of Payments or Proceeds.** All payments accepted by Lender shall be applied to the Secured Debt under this Security Instrument as provided in the Agreement unless Applicable Law provides otherwise. Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Agreement shall not extend or postpone the due date, or change the amount, of the Minimum Payment.

3.     **Funds for Escrow Items.** Borrower shall not be required to pay into escrow amounts due for taxes, assessments, leasehold payments, or other insurance premiums unless otherwise agreed in a separate writing.

TERRANCE DURR/995070670856510

GEORGIA HOME EQUITY LINE OF CREDIT SECURITY DEED
GAHESI.HLC  10/06/06                          Page 3 of 12                    DocMagic *eFormns* 800-649-1362
                                                                             www.docmagic.com

Nm:ANGELA WHITE(1153273), Rq:62,4

Deed Book **45357** Pg    **163**

**4.    Charges; Liens; Prior Security Interests.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in a manner provided in Section 3.

Borrower shall promptly discharge any lien, other than the Approved Prior Loan, which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, other than the Approved Prior Loan, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth in this Section.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with the Agreement. Borrower shall pay when due, or shall cause to be paid when due, all sums required under the loan documents evidencing the Approved Prior Loan and shall perform or cause to be performed all of the covenants and agreements of Borrower or the obligor set forth in such loan documents. All of Lender's rights under this Covenant shall be subject to the rights of the Holder of the Approved Prior Loan.

**5.    Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Agreement. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section shall become additional Secured Debt of Borrower and secured by this Security Instrument. These amounts shall be subject to the terms of the Agreement and the Security Instrument.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgagee clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgagee clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender

**TERRANCE  DURR/995070670856510**

GEORGIA HOME EQUITY LINE OF CREDIT SECURITY DEED
GAHESI.HLC  10/06/06                                                        Page 4 of 12                                        *DocMagic ℰⱭʳₘₛ* 800-649-1362
www.docmagic.com

has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Debt secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Agreement or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Agreement or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of the Agreement and Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower resides on the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Home Equity Line of Credit Application Process; Default.** Borrower shall be in default if, during the Account application process, or at any time during the term of the Agreement, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Account. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

Borrower is also in default if: 1) Borrower engages in fraud or makes a material misrepresentation at any time in connection with Borrower's Account; 2) Lender does not receive the full amount of any Minimum Payment due or Borrower fails to meet any of the other repayment terms of the Agreement; 3) Borrower's action or inaction adversely affects the Property or Lender's rights in it. Examples of these actions or inactions include, but are not limited to: a) Borrower's's death, if Borrower is the sole person on the Account; or the death of all but one borrower which adversely affects Lender's security; b) Illegal use of the Property, if such use subjects the Property to seizure; c) Transfer of all or part of the Borrower's interest in the Property without Lender's written consent; d) All or part of the Property is taken by condemnation or eminent domain; e) Foreclosure of any senior lien on the Property; f)

Failure to maintain required insurance on the Property;  g)  Waste or destructive use of the Property which adversely affects Lender's security;  h)  Failure to pay taxes or assessments on the Property;  i)  Permitting the creation of a senior lien on the Property other than an Approved Prior Loan;  j)  Filing of a judgment against Borrower, if the amount of the judgment and collateral subject to the judgment is such that Lender's security is adversely affected.

Lender may, at its option, take lesser actions than those described at the beginning of this Section.  Such lesser actions may include, without limitation, suspending Borrower's Account and not allowing Borrower to obtain any further Advances, reducing Borrower's Credit Limit, and/or changing the payment terms on Borrower's Account. If Lender takes any such actions, this shall not constitute an election of remedies or a waiver of Lender's right to exercise any rights or remedies under the remainder of this Section, the remaining provisions of the Agreement, the Security Instrument, or at law or in equity.  Lender may take action under this Section only after complying with any notice or cure provisions required under Applicable Law.  In the event Lender elects not to terminate the Account or take any lesser action as provided in this Section, Lender does not forfeit or waive its right to do so at a later time if any of the circumstances described above exists at that time.

**9.    Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below).  Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section shall become additional Secured Debt of Borrower secured by this Security Instrument, payable according to the terms of the Agreement and this Security Instrument.  These amounts shall bear interest at the Agreement rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.  If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease.  Borrower shall not, without the express written consent of Lender, alter or amend the ground lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.    Mortgage Insurance.**  Borrower is not required to obtain Mortgage Insurance unless otherwise agreed in writing.

**11.    Assignment of Miscellaneous Proceeds; Forfeiture.**  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the Secured Debt secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in the Agreement and this Security Instrument.

TERRANCE DURR/995070670856510
GEORGIA HOME EQUITY LINE OF CREDIT SECURITY DEED
GAHESI.HLC  10/06/06                               Page 6 of 12                      DocMagic *eRrorms* 800-649-1362
                                                                                    www.docmagic.com

under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender.

14. **Agreement/Account Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Account is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other Account charges collected or to be collected in connection with the Account exceed the permitted limits, then: (a) any such Account charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Agreement). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Agreement conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Agreement which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Agreement and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender or causes Lender to be paid all sums which then would be due under this Security Instrument and the Agreement as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the Secured Debt secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Change of Servicer; Notice of Grievance.** The Agreement or a partial interest in the Agreement (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Servicer") that collects the amounts due under the Agreement and this Security Instrument and performs other mortgage loan servicing obligations under the Agreement, this Security Instrument, and Applicable Law. There also might be one or more changes of the Servicer unrelated to a sale of the Agreement. If the Agreement is sold and thereafter the Agreement is serviced by a Servicer other than the purchaser of the Agreement, the servicing obligations to Borrower will remain with the Servicer or be transferred to a successor Servicer and are not assumed by the Agreement purchaser unless otherwise provided.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party and allowed the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and reasonable time to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a

TERRANCE DURR/995070670856510
GEORGIA HOME EQUITY LINE OF CREDIT SECURITY DEED
GAHESI.HLC 10/06/06                    Page 9 of 12                    DocMagic *eForms* 800-649-1362
                                                                       www.docmagic.com

condition that adversely affects the value of the Property.   The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand,  lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance  which adversely affects the value of the Property. If Borrower learns, or is notified  by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.**         Borrower and Lender further covenant and agree as follows:

**22.   Acceleration; Remedies. Lender shall give notice as required by Applicable Law prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument or the Agreement (but not prior to acceleration under Section 18 of the Security Instrument unless Applicable Law provides otherwise), Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any art of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied.  The recitals in the Trustee's deed shall be prima facie evidence of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.**

**23.   Release.   Upon Borrower's request, and upon payment in full of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument.  Borrower shall pay any recordation costs.  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for   services rendered and the charging of the fee is permitted under Applicable Law.**

**24.   Waiver of Homestead.  Borrower waives all rights of homestead exemption in the Property.**

**25.   Assumption Nota Novation.   Lender's acceptance of an assumption of the obligations of this Security Instrument and the Agreement, and any release of Borrower in connection therewith, shall not constitute a novation.**

**26.   Security Deed; Future Advances.   This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby. This Security Instrument secures future advances.**

Deed Book **45357** Pg    **170**

**BENEFICIARY REQUESTS NOTICE OF ANY ADVERSE ACTION**
**———————— THAT A PRIORITY LIEN HOLDER TAKES WITH REGARD TO ————————**
**THE PROPERTY, INCLUDING DEFAULT AND FORECLOSURE**

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

3-16-07

_____ (Seal)          _____ (Seal)
TERRANCE DURR                         -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                                          -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                                          -Borrower                                              -Borrower

**TERRANCE DURR/995070670856510**
GEORGIA HOME EQUITY LINE OF CREDIT SECURITY DEED
GAHESI.HLC  10/06/06                                    Page 11 of 12                          DocMagic *eForms* 800-649-1362
                                                                                                                        www.docmagic.com

Deed Book **45357** Pg   **171**

[Space Below This Line For Acknowledgment]

Signed, sealed and delivered in the presence of:

_____          _____
Unofficial Witness                                       Unofficial Witness

```
EMILY M. PARKS
NOTARY PUBLIC
Fulton County
State of Georgia
My Comm. Expires Jan. 4, 2010
```

Notary Public
State of Georgia

My commission expires: _Jan 4, 2010_

Deed Book **45357** Pg **172**
**Cathelene Robinson**
Clerk of Superior Court
Fulton County, Georgia

H074B354

## SCHEDULE A

THE FOLLOWING REAL PROPERTY SITUATE IN COUNTY OF FULTON AND STATE OF GEORGIA, DESCRIBED AS FOLLOWS:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN THE CITY OF ATLANTA IN LAND LOT 111 OF THE 14TH LAND DISTRICT OF FULTON COUNTY, GEORGIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EAST SIDE OF GRIFFIN STREET TWENTY-NINE AND FOUR TENTHS SOUTH FROM THE SOUTHEAST CORNER OF GRIFFIN STREET AND MCLDRUM STREET; THENCE EAST ONE HUNDRED (100) FEET TO A TEN (10) FOOT ALLEY; THENCE SOUTH ALONG THE WEST SIDE OF SAID ALLEY TWENTY NINE AND FOUR TENTHS (29.4) FEET; THENCE WEST ONE HUNDRED (100) TO GRIFFIN STREET; THENCE NORTH ALONG THE EAST SIDE OF GRIFFIN STREET TWENTY NINE AND FOUR TENTHS (29.4) FEET TO THE POINT OF BEGINNING; BEING IMPROVED PROPERTY KNOWN AS NO. 523 GRIFFIN STREET, N.W., ACCORDING TO THE PRESENT NUMBERING HOUSES IN THE CITY OF ATLANTA, GEORGIA, BEING THE SAME PROPERTY CONVEYED BY DEED RECORDED IN DEED BOOK 24189, PAGE 118, FULTON COUNTY, GEORGIA RECORDS.

PARCEL ID: 14-0111-0002-165

PROPERTY ADDRESS: 523 GRIFFIN STREET NORTHWEST

EXHIBIT
10
ALL-STATE LEGAL

**Top Left Copy (Copy B):**

| a Employee's SSN 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 | 1 Wages, tips, other compensation 31,605.24 | 2 Federal income tax withheld 854.98 |
|---|---|---|
| OMB No. 1545-0008 | 3 Social security wages 31,605.24 | 4 Social security tax withheld 1, |
| b Employer identification number 63-0733351 | 5 Medicare wages and tips 31,605.24 | 6 Medicare tax withheld 458.31 |

c Employer's name, address, and ZIP code
Adam's Beverages, Inc.
3116 John D Odom Road

Dothan                AL  36303

e Employee's first name and initial: Terrance    Last name: Durr    Suff.
249 Beauville Dr.

Kinsey              al  36301
f Employee's address and Zip code

| d Control number | 7 Social security tips | 8 Allocated tips |
|---|---|---|
| 9 Advance EIC payment | 10 Dependent care benefits | 11 Nonqualified plans |
| 12a | 14 Other GrpHealth  3,984.50 | |
| 12b | | |
| 12c | | |
| 12d | | |

13 Statutory employee ☐  Retirement plan ☐  Third-party sick pay ☐

| 15 State AL  Employer's state ID number 0000103669 | 16 State wages, tips, etc. 31,605.24 | 17 State income tax 986.78 |
|---|---|---|
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form **W-2** Wage and Tax Statement **2009**
Copy B - To Be Filed with Employee's FEDERAL Tax Return
Department of Treasury-Internal Revenue Service

---

**Top Right Copy (Copy 2):**

| a Employee's SSN ...4781 | 1 Wages, tips, other compensation 31,605.24 | 2 Federal income tax withheld 854.98 |
|---|---|---|
| | 3 Social security wages 31,605.24 | 4 Social security tax withheld 1,959.47 |
| b Employer identification number 63-0733351 | 5 Medicare wages and tips 31,605.24 | 6 Medicare tax withheld 458.31 |

c Employer's name, address, and ZIP code
Adam's Beverages, Inc.
3116 John D Odom Road

Dothan                AL  36303

| d Control number | 7 Social security tips | 8 Allocated tips |
|---|---|---|

e Employee's first name and initial: Terrance    Last name: Durr    Suff.
249 Beauville Dr.

Kinsey              al  36301
f Employee's address and Zip code

13 Statutory employee ☐  Retirement plan ☐  Third-party sick pay ☐

| 9 Advance EIC payment | 10 Dependent care benefits | 11 Nonqualified plans |
|---|---|---|
| 12a | 14 Other GrpHealth  3,984.50 | |
| 12b | | |
| 12c | | |
| 12d | | |

| 15 State AL  Employer's state ID number 0000103669 | 16 State wages, tips, etc. 31,605.24 | 17 State income tax 986.78 |
|---|---|---|
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form **W-2** Wage and Tax Statement **2009**
Copy 2 - To Be Filed With Employee's State, City, or Local Income Tax Return
Department of Treasury-Internal Revenue Service

---

**Bottom Left Copy (Copy C):**

| a Employee's SSN 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 | 1 Wages, tips, other compensation 31,605.24 | 2 Federal income tax withheld 854.98 |
|---|---|---|
| OMB No. 1545-0008 | 3 Social security wages 31,605.24 | 4 Social security tax withheld 1,959.47 |
| b Employer identification number 63-0733351 | 5 Medicare wages and tips 31,605.24 | 6 Medicare tax withheld 458.31 |

c Employer's name, address, and ZIP code
Adam's Beverages, Inc.
3116 John D Odom Road

Dothan                AL  36303

e Employee's first name and initial: Terrance    Last name: Durr    Suff.
249 Beauville Dr.

Kinsey              al  36301
f Employee's address and Zip code

| d Control number | 7 Social security tips | 8 Allocated tips |
|---|---|---|
| 9 Advance EIC payment | 10 Dependent care benefits | 11 Nonqualified plans |
| 12a | 14 Other GrpHealth  3,984.50 | |
| 12b | | |
| 12c | | |
| 12d | | |

13 Statutory employee ☐  Retirement plan ☐  Third-party sick pay ☐

| 15 State AL  Employer's state ID number 0000103669 | 16 State wages, tips, etc. 31,605.24 | 17 State income tax 986.78 |
|---|---|---|
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form **W-2** Wage and Tax Statement **2009**   Copy C - For EMPLOYEE'S RECORDS

This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.

---

**Bottom Right Copy (Copy 2):**

| a Employee's SSN 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 | 1 Wages, tips, other compensation 31,605.24 | 2 Federal income tax withheld 854.98 |
|---|---|---|
| OMB No. 1545-0008 | 3 Social security wages 31,605.24 | 4 Social security tax withheld 1,959.47 |
| b Employer identification number 63-0733351 | 5 Medicare wages and tips 31,605.24 | 6 Medicare tax withheld 458.31 |

c Employer's name, address, and ZIP code
Adam's Beverages, Inc.
3116 John D Odom Road

Dothan                AL  36303

e Employee's first name and initial: Terrance    Last name: Durr    Suff.
249 Beauville Dr.

Kinsey              al  36301
f Employee's address and Zip code

| d Control number | 7 Social security tips | 8 Allocated tips |
|---|---|---|
| 9 Advance EIC payment | 10 Dependent care benefits | 11 Nonqualified plans |
| 12a | 14 Other GrpHealth  3,984.50 | |
| 12b | | |
| 12c | | |
| 12d | | |

13 Statutory employee ☐  Retirement plan ☐  Third-party sick pay ☐

| 15 State AL  Employer's state ID number 0000103669 | 16 State wages, tips, etc. 31,605.24 | 17 State income tax 986.78 |
|---|---|---|
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form **W-2** Wage and Tax Statement **2009**
Copy 2 - To Be Filed With Employee's State, City, or Local Income Tax Return
Department of Treasury-Internal Revenue Service

## Copy B (Top Left)

| a Employee's SSN 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 | 1 Wages, tips, other compensation 27,824.05 | 2 Federal income tax withheld 1,261.28 |
|---|---|---|
| OMB No. 1545-0008 | 3 Social security wages 27,824.05 | 4 Social security tax withheld 1,725.09 |
| b Employer identification number 63-0733351 | 5 Medicare wages and tips 27,824.05 | 6 Medicare tax withheld 403.49 |

c Employer's name, address, and ZIP code

Adam's Beverages, Inc.
3116 John D Odom Road

Dothan                          AL   36303

e Employee's first name and initial: Terrance   Last name: Durr   Suff.

1306 Fairlane Avenue

Dothan                          AL   36301

f Employee's address and Zip code

| d Control number 0210 | 7 Social security tips | 8 Allocated tips |
|---|---|---|
| 9 Advance EIC payment | 10 Dependent care benefits | 11 Nonqualified plans |

| 12a | 14 Other GrpHealth   3,984.60 |
| 12b | |
| 12c | |
| 12d | |

| 13 Statutory employee ☐   Retirement plan ☐   Third-party sick pay ☐ |

| 15 State AL   Employer's state ID number 103669 | 16 State wages, tips, etc. 27,824.05 | 17 State income tax 784.03 |
|---|---|---|
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement   2008   Department of Treasury-Internal Revenue Service

Copy B To Be Filed with Employee's FEDERAL Tax Return

## Copy 2 (Top Right)

| a Employee's SSN 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 | 1 Wages, tips, other compensation 27,824.05 | 2 Federal income tax withheld 1,261.28 |
|---|---|---|
| OMB No. 1545-0008 | 3 Social security wages 27,824.05 | 4 Social security tax withheld 1,725.09 |
| b Employer identification number 63-0733351 | 5 Medicare wages and tips 27,824.05 | 6 Medicare tax withheld 403.49 |

c Employer's name, address, and ZIP code

Adam's Beverages, Inc.
3116 John D Odom Road

Dothan                          AL   36303

| d Control number 0210 | 7 Social security tips | 8 Allocated tips |
|---|---|---|

e Employee's first name and initial: Terrance   Last name: Durr   Suff.

1306 Fairlane Avenue

Dothan                          AL   36301

f Employee's address and Zip code

| 13 Statutory employee ☐   Retirement plan ☐   Third-party sick pay ☐ |
| 9 Advance EIC payment | 10 Dependent care benefits | 11 Nonqualified plans |

| 12a | 14 Other GrpHealth   3,984.60 |
| 12b | |
| 12c | |
| 12d | |

| 15 State AL   Employer's state ID number 103669 | 16 State wages, tips, etc. 27,824.05 | 17 State income tax 784.03 |
|---|---|---|
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement   2008   Department of Treasury-Internal Revenue Service

Copy 2 To Be Filed with Employee's State, City, or Local Income Tax Return

## Copy C (Bottom Left)

| a Employee's SSN 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 | 1 Wages, tips, other compensation 27,824.05 | 2 Federal income tax withheld 1,261.28 |
|---|---|---|
| OMB No. 1545-0008 | 3 Social security wages 27,824.05 | 4 Social security tax withheld 1,725.09 |
| b Employer identification number 63-0733351 | 5 Medicare wages and tips 27,824.05 | 6 Medicare tax withheld 403.49 |

c Employer's name, address, and ZIP code

Adam's Beverages, Inc.
3116 John D Odom Road

Dothan                          AL   36303

e Employee's first name and initial: Terrance   Last name: Durr   Suff.

1306 Fairlane Avenue

Dothan                          AL   36301

f Employee's address and Zip code

| d Control number 0210 | 7 Social security tips | 8 Allocated tips |
|---|---|---|
| 9 Advance EIC payment | 10 Dependent care benefits | 11 Nonqualified plans |

| 12a | 14 Other GrpHealth   3,984.60 |
| 12b | |
| 12c | |
| 12d | |

| 13 Statutory employee ☐   Retirement plan ☐   Third-party sick pay ☐ |

| 15 State AL   Employer's state ID number 103669 | 16 State wages, tips, etc. 27,824.05 | 17 State income tax 784.03 |
|---|---|---|
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement   2008   Copy C For EMPLOYEE'S RECORDS

This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.

## Copy 2 (Bottom Right)

| a Employee's SSN 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 | 1 Wages, tips, other compensation 27,824.05 | 2 Federal income tax withheld 1,261.28 |
|---|---|---|
| OMB No. 1545-0008 | 3 Social security wages 27,824.05 | 4 Social security tax withheld 1,725.09 |
| b Employer identification number 63-0733351 | 5 Medicare wages and tips 27,824.05 | 6 Medicare tax withheld 403.49 |

c Employer's name, address, and ZIP code

Adam's Beverages, Inc.
3116 John D Odom Road

Dothan                          AL   36303

e Employee's first name and initial: Terrance   Last name: Durr   Suff.

1306 Fairlane Avenue

Dothan                          AL   36301

f Employee's address and Zip code

| d Control number 0210 | 7 Social security tips | 8 Allocated tips |
|---|---|---|
| 9 Advance EIC payment | 10 Dependent care benefits | 11 Nonqualified plans |

| 12a | 14 Other GrpHealth   3,984.60 |
| 12b | |
| 12c | |
| 12d | |

| 13 Statutory employee ☐   Retirement plan ☐   Third-party sick pay ☐ |

| 15 State AL   Employer's state ID number 103669 | 16 State wages, tips, etc. 27,824.05 | 17 State income tax 784.03 |
|---|---|---|
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement   2008   Department of Treasury-Internal Revenue Service

Copy 2 To Be Filed with Employee's State, City, or Local Income Tax Return

**Form W-2 (top left) — Copy B**

| Box | Value |
|---|---|
| a Employee's SSN | 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 |
| OMB No. 1545-0008 | |
| 1 Wages, tips, other compensation | 27,672.30 |
| 2 Federal income tax withheld | 869.95 |
| 3 Social security wages | 27,672.30 |
| 4 Social security tax withheld | 1,715.66 |
| b Employer identification number | 63-0733351 |
| 5 Medicare wages and tips | 27,672.30 |
| 6 Medicare tax withheld | 401.22 |

c Employer's name, address, and ZIP code
Adam's Beverages, Inc.
3116 John D Odom Road
Dothan                AL  36303

e Employee's first name and initial: Terrance
Last name: Durr
179 Bevins Drive
Ozark                 AL  36360

d Control number: 0210
7 Social security tips
8 Allocated tips
9 Advance EIC payment
10 Dependent care benefits
11 Nonqualified plans

14 Other
Dental       44.28
GrpHealth  4128.02

13 Statutory employee / Retirement plan / Third-party sick pay

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax |
|---|---|---|---|
| AL | 0000103669 | 27,672.30 | 903.23 |

18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name

Form W-2 Wage and Tax Statement 2010
Copy B - To Be Filed With Employee's FEDERAL Tax Return.
Department of Treasury-Internal Revenue Service

---

**Form W-2 (top right) — Copy 2**

| Box | Value |
|---|---|
| a Employee's SSN | 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 |
| OMB No. 1545-0008 | |
| 1 Wages, tips, other compensation | 27,672.30 |
| 2 Federal income tax withheld | 869.95 |
| 3 Social security wages | 27,672.30 |
| 4 Social security tax withheld | 1,715.66 |
| b Employer identification number | 63-0733351 |
| 5 Medicare wages and tips | 27,672.30 |
| 6 Medicare tax withheld | 401.22 |

c Employer's name, address, and ZIP code
Adam's Beverages, Inc.
3116 John D Odom Road
Dothan                AL  36303

d Control number: 0210
7 Social security tips
8 Allocated tips

e Employee's first name and initial: Terrance
Last name: Durr
179 Bevins Drive
Ozark                 AL  36360

13 Statutory employee / Retirement plan / Third-party sick pay
9 Advance EIC payment
10 Dependent care benefits
11 Nonqualified plans

14 Other
Dental       44.28
GrpHealth  4128.02

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax |
|---|---|---|---|
| AL | 0000103669 | 27,672.30 | 903.23 |

18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name

Form W-2 Wage and Tax Statement 2010
Copy 2 - To Be Filed With Employee's State, City, or Local Income Tax Return.
Department of Treasury-Internal Revenue Service

---

**Form W-2 (bottom left) — Copy C**

| Box | Value |
|---|---|
| a Employee's SSN | 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 |
| OMB No. 1545-0008 | |
| 1 Wages, tips, other compensation | 27,672.30 |
| 2 Federal income tax withheld | 869.95 |
| 3 Social security wages | 27,672.30 |
| 4 Social security tax withheld | 1,715.66 |
| b Employer identification number | 63-0733351 |
| 5 Medicare wages and tips | 27,672.30 |
| 6 Medicare tax withheld | 401.22 |

c Employer's name, address, and ZIP code
Adam's Beverages, Inc.
3116 John D Odom Road
Dothan                AL  36303

e Employee's first name and initial: Terrance
Last name: Durr
179 Bevins Drive
Ozark                 AL  36360

d Control number: 0210
7 Social security tips
8 Allocated tips
9 Advance EIC payment
10 Dependent care benefits
11 Nonqualified plans

14 Other
Dental       44.28
GrpHealth  4128.02

13 Statutory employee / Retirement plan / Third-party sick pay

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax |
|---|---|---|---|
| AL | 0000103669 | 27,672.30 | 903.23 |

18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name

Form W-2 Wage and Tax Statement 2010
Copy C - For EMPLOYEE'S RECORDS.
This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.

---

**Form W-2 (bottom right) — Copy 2**

| Box | Value |
|---|---|
| a Employee's SSN | 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 |
| OMB No. 1545-0008 | |
| 1 Wages, tips, other compensation | 27,672.30 |
| 2 Federal income tax withheld | 869.95 |
| 3 Social security wages | 27,672.30 |
| 4 Social security tax withheld | 1,715.66 |
| b Employer identification number | 63-0733351 |
| 5 Medicare wages and tips | 27,672.30 |
| 6 Medicare tax withheld | 401.22 |

c Employer's name, address, and ZIP code
Adam's Beverages, Inc.
3116 John D Odom Road
Dothan                AL  36303

e Employee's first name and initial: Terrance
Last name: Durr
179 Bevins Drive
Ozark                 AL  36360

d Control number: 0210
7 Social security tips
8 Allocated tips
9 Advance EIC payment
10 Dependent care benefits
11 Nonqualified plans

14 Other
Dental       44.28
GrpHealth  4128.02

13 Statutory employee / Retirement plan / Third-party sick pay

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax |
|---|---|---|---|
| AL | 0000103669 | 27,672.30 | 903.23 |

18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name

Form W-2 Wage and Tax Statement 2010
Copy 2 - To Be Filed With Employee's State, City, or Local Income Tax Return.
Department of Treasury-Internal Revenue Service

**Copy 1 (top left)**

| d Control number 0210 | 1 Wages, tips, other compensation 29,135.20 | 2 Federal income tax withheld 1,265.72 |
|---|---|---|
| OMB No. 1545-0008 | 3 Social security wages 29,135.20 | 4 Social security tax withheld 1,775.36 |
| b Employer identification number 63-0733351 | 5 Medicare wages and tips 29,135.20 | 6 Medicare tax withheld 415.20 |

c Employer's name, address, and ZIP code
Adam's Beverages, Inc.
3116 John D Odom Road
Dothan                    AL   36303

e Employee's first name and initial   Terrance   Last name   Durr   Suff.
1306 Fairlane Avenue
Dothan                    AL   36301
f Employee's address and Zip code

a Employee's SSN 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
7 Social security tips
8 Allocated tips
9 Advance EIC payment
10 Dependent care benefits
11 Nonqualified plans
12a
12b
12c
12d
14 Other   GrpHealth   3,987.10
13 Statutory employee / Retirement plan / Third-party sick pay

| 15 State AL | Employer's state ID number 103669 | 16 State wages, tips, etc. 29,135.20 | 17 State income tax 808.43 |
|---|---|---|---|

18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name

Form W-2 Wage and Tax Statement 2007   Copy B To Be Filed with Employee's FEDERAL Tax Return
Department of Treasury–Internal Revenue Service

**Copy 2 (top right)** — identical data, Copy 2 To Be Filed With Employee's State, City, or Local Income Tax Return

**Copy 3 (bottom left)** — identical data, Copy C For EMPLOYEE'S RECORDS

**Copy 4 (bottom right)** — identical data, Copy 2 To Be Filed With Employee's State, City, or Local Income Tax Return

**Form W-2** Wage and Tax Statement **2007** Copy C To Be Filed with Employee's FEDERAL Tax Return
Department of the Treasury—Internal Revenue Service

d Control number   0210   OMB No. 1545-0008

| | | |
|---|---|---|
| 1 Wages, tips, other compensation 29,135.20 | 2 Federal income tax withheld 1,265.72 | |
| 3 Social security wages 29,135.20 | 4 Social security tax withheld 1,775.36 | |
| 5 Medicare wages and tips 29,135.20 | 6 Medicare tax withheld 415.20 | |

b Employer identification number
63-07333351

c Employer's name, address, and ZIP code
Adam's Beverages, Inc.
3116 John D Odom Road
Dothan                          AL  36303

e Employee's SSN
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

f Employee's first name and initial   Last name   Suff.
Dothan                          Durr
Terrance
1306 Fairlane Avenue

Dothan                          AL  36301

| 7 Social security tips | 8 Allocated tips |
|---|---|
| 9 Advance EIC payment | 10 Dependent care benefits |
| 11 Nonqualified plans | |
| 13 Statutory employee / Retirement plan / Third-party sick pay | 14 Other  GrpHealth  3,987.10 |
| 12a | |
| 12b | |
| 12c | |
| 12d | |

| 15 State  Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax |
|---|---|---|
| AL  1103669 | 29,135.20 | 808.43 |

| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|

---

**Form W-2** Wage and Tax Statement **2007** Copy 2 To Be Filed With Employee's State, City, or Local Income Tax Return
Department of the Treasury—Internal Revenue Service

d Control number   0210   OMB No. 1545-0008

| | | |
|---|---|---|
| 1 Wages, tips, other compensation 29,135.20 | 2 Federal income tax withheld 1,265.72 | |
| 3 Social security wages 29,135.20 | 4 Social security tax withheld 1,775.36 | |
| 5 Medicare wages and tips 29,135.20 | 6 Medicare tax withheld 415.20 | |

b Employer identification number
63-0733351

c Employer's name, address, and ZIP code
Adam's Beverages, Inc.
3116 John D Odom Road
Dothan                          AL  36303

e Employee's SSN
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

f Employee's first name and initial   Last name   Suff.
Dothan                          Durr
Terrance
1306 Fairlane Avenue

Dothan                          AL  36301

| 7 Social security tips | 8 Allocated tips |
|---|---|
| 9 Advance EIC payment | 10 Dependent care benefits |
| 11 Nonqualified plans | |
| 13 Statutory employee / Retirement plan / Third-party sick pay | 14 Other  GrpHealth  3,987.10 |
| 12a | |
| 12b | |
| 12c | |
| 12d | |

| 15 State  Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax |
|---|---|---|
| AL  1103669 | 29,135.20 | 808.43 |

| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|