```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF GEORGIA
                  COLUMBUS DIVISION
```

| | |
|---|---|
| United States of America, | * |
|     Plaintiff, | * |
| vs. | * |
| $21,175.00 IN UNITED STATES FUNDS, | *     CASE NO. 4:11-CV-38 (CDL) |
| | * |
|     Defendant Property, | * |
| TERRANCE DURR, | * |
|     Claimant. | |

O R D E R

Plaintiff United States of America filed this forfeiture action against $21,175.00 in United States Funds pursuant to 21 U.S.C. § 881(a)(6). Terrance Durr filed a timely claim to the property. On June 26, 2012, the Court held a non-jury trial. The Court, after carefully considering all of the evidence, finds in favor of Plaintiff based on the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

After considering the evidence presented at trial, the Court finds that the following facts have been proven by a preponderance of the evidence:

1. On October 30, 2010, at approximately 7:37 a.m., Deputy Drew Crane, of the Harris County, Georgia, Sheriff's Office stopped

a white Chrysler Sebring ("the vehicle") for a traffic violation on Interstate 185 North.

2. Deputy Crane approached the passenger side of the vehicle to make contact with the driver, later identified as Jerry Lamar Lett ("Lett").

3. When Lett rolled down the passenger window, Deputy Crane detected a strong odor of alcohol and marijuana coming from inside the vehicle.

4. Deputy Crane also observed a single key in the vehicle's ignition.

5. Deputy Crane observed that the passenger, later identified as Terrance Devon Durr ("Durr"), had a large bulge in his left front pants pocket.  Based on that observation, Deputy Crane asked Durr and received consent to search his person.

6. Deputy Crane's search of Durr's person revealed $1,200.00 of United States currency in his front left pants pocket.

7. Deputy Crane asked Durr if he had any more currency in the vehicle, and Durr indicated that he did not.

8. After obtaining consent, Deputy Crane searched the vehicle. A search of the vehicle revealed a blue and white plastic bag stuffed and hidden under the front passenger seat.  Upon retrieving and opening the bag, Deputy Crane discovered that it contained a large amount of United States currency.

9. The currency in the plastic bag was stacked in amounts adding up to $1,000.00 each and wrapped with colored rubber bands.

10. Deputy Crane asked Lett and Durr several times who the currency belonged to before Lett finally motioned towards Durr, indicating that it belonged to Durr. Durr did not volunteer that the money was his until Lett indicated that it was.

11. Deputy Crane asked Durr if the currency belonged to him, and Durr initially hesitated but eventually stated that it did belong to him.

12. A criminal history records check revealed that both Lett and Durr have had prior arrests and convictions for felony narcotics violations.

13. The currency, the Defendant Property, was seized and counted. It totaled $21,175.00.

14. At the Harris County Sheriff's Office, Deputy Dwight Duke utilized a dog, trained to detect the odor of certain controlled substances, ("K-9") to conduct a sweep of the seized currency and a free air sniff of the vehicle.

15. The K-9 gave a positive alert to an odor of illegal narcotics on the currency and the vehicle.

16. Durr makes a claim to the seized Property. At trial, Durr attempted to explain where he got the money and why he was traveling with such a large amount of cash hidden under the

passenger seat of the vehicle. He testified that he had been duped into some type of real estate scam in Atlanta that resulted in him owning a dilapidated rental house and being obligated on a promissory note with a security deed on the house. He claimed that he had received notices from the bank that he was in default on the note, that the debt exceeded $60,000, and that foreclosure proceedings were imminent. Although these notices from the bank had been provided to him many months before, he decided to drive up to Atlanta on a Saturday, without an appointment or any correspondence indicating who he should talk to, find a branch of the bank that had the loan, walk in with the cash, and try to straighten out the debt. Then, with whatever he had left, he was going to try to repair the home, which based on the photographs admitted into evidence was in terrible shape. He explained that the cash came from savings and a loan from his father, who had won a large sum in "bingo games." He testified that he had been hiding the cash under his grandmother's bed. Neither his dad nor his grandmother testified to corroborate his story. Moreover, the driver of the vehicle, Lett, likewise did not testify to corroborate the purpose of the trip. The Court finds Durr's explanation of how he got the money and what he was going to use it for implausible, and thus concludes that Durr provided

4

insufficient evidence that the money was derived from a legitimate source or was to be used for a legitimate purpose.

## CONCLUSIONS OF LAW

1. The United States "must establish by a preponderance of the evidence that the property is subject to forfeiture." *United States v. $183,791 in U.S. Currency*, 391 F. App'x 791, 794 (11th Cir. 2010) (per curiam) (citing 18 U.S.C. § 983(c)(1)). Specifically, in forfeiture actions brought under 21 U.S.C. § 881(a)(6), the Government "need only show that the money was 'related to some illegal drug transaction.'" *Id.* To determine whether the Government has met its burden, the Court looks to the "totality of the circumstances." *Id.*

2. After the government meets its burden of proof, the claimant may seek to establish by a preponderance of the evidence that the Defendant Property was not used in or related to a violation of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, in other words that the claimant was an innocent owner. 18 U.S.C. § 983(d).

3. The totality of the facts in this case demonstrates a substantial connection and relation between the Defendant Property and illegal drug activity. The factors leading to this conclusion include the following: (1) the odor of marijuana that Deputy Crane detected when he approached the vehicle during the stop; (2) Durr's initial denial of currency

being in the vehicle and his inconsistent behavior regarding the currency; (3) Lett and Durr were traveling in a third-party's vehicle with a single vehicle key; (4) the amount of currency Durr was transporting and the manner in which it was bundled, bagged, and hidden under the passenger seat; (5) the odor of narcotics detected by the K-9 on both the currency and the vehicle; (6) Durr's drug-related criminal history, coupled with Lett's prior drug conviction; and (7) Durr's inability to provide a legitimate source for the currency or plausible purpose for transporting it.

4. Pursuant to 21 U.S.C. § 881(a)(6), the Defendant Property, described as follows, is hereby forfeited to and vested in the Plaintiff, the United States, to be disposed of in accordance with the law: $21,175.00 in United States currency.

CONCLUSION

At trial, the Government proved that the Defendant Property is United States currency that constitutes proceeds traceable to an exchange for a controlled substance in violation of the Controlled Substances Act. Accordingly, the Defendant Property is forfeitable pursuant to 21 U.S.C. § 881(a)(6) and is hereby forfeited to the United States.

IT IS SO ORDERED, this 29th day of June, 2012.

                                        S/Clay D. Land
                                           CLAY D. LAND
                            UNITED STATES DISTRICT JUDGE