**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CASE NO.: 4:11-CV-38 (CDL)** |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| $21,175.00 IN UNITED STATES | ) | |
| FUNDS, | ) | |
| | ) | |
| Defendant Property, | ) | |
| | ) | |
| TERRANCE DURR, | ) | |
| | ) | |
| Claimant. | ) | |

## MEMORANDUM IN SUPPORT OF CLAIMANT'S MOTION FOR FOR NEW TRIAL

Claimant, Terrance Durr (hereinafter referred to as Durr), moves this Court to grant him a new trial pursuant to Fed. R. Civ. P. 59.  As grounds for said motion, Claimant would state as follows:

## STATEMENT OF FACTS

On June 26, 2012, the Trial Court held a non-jury trial regarding the forfeiture of the Claimant's $21,175.00.  On June 29, 2012, the Trial Court entered a verdict forfeiting the defendant property, $21,175.00 to the United States Government.  (Doc. 41).  The Court entered an order holding that the United States currency constitutes proceeds traceable to an exchange for a controlled substance in violation of the Controlled Substances Act. (Doc. 41, p.6).  The evidence produced at trial was insufficient to forfeit the currency, and Durr had a legitimate source

for the forfeited currency.

## APPLICABLE STANDARDS OF REVIEW

Federal Rule of Civil Procedure 59(a)(2) states as follows:

> **Further Action After a Nonjury Trial.** After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.

Fed. R. Civ. P. 59 (a)(2)

A motion for new trial should be granted when "the verdict is against the clear weight of the of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *See Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183,1186 (11th Cir. 2001). (quoting *Hewitt v. B.F. Goodrich Co.,* 732 F.2d 1554, 1556 (11th Cir.1984)).

## MEMORANDUM OF LAW

### A.     Burden of proof

The United States "must establish by a preponderance of the evidence that the property is subject to forfeiture." *United States v. $183, 791 in U.S. Currency,* 391 F. App'x 791, 794 (11th Cir. 2010) (per curiam) (citing 18 U.S.C. § 983(c)(1)). Further, there must be a showing by the government that the money was substantially connected to illegal drug transactions. *United States v. Carrell,* 252 F.3d 1193, 1201 C.A.11 (Ala. 2001). A claimant need only establish affirmative defense by a preponderance of the evidence. *United States v. One Parcel (2526 Faxon Avenue)*, 145 F. Supp. 2d 942, 951 (W.D. Tenn., 2001). A valid defense is that the seized funds had an independent innocent source and are not traceable to criminal activity. *See United States*

*v. $215,300 United States Currency,* 882 F.2d417, 420 (9th Cir. 1989). Employment and business income may be proffered as a independent innocent source. *See United States v. Property at 2323 Charms Road,* 726 F. Supp. 164, 169 (E.D. Mich. 1989); *United States v. 228 Acres of Land,* 916 F.2d 808, 812-13 (2d Cir. 1990); *United States v. Miscellaneous Jewelry,* 667 F. Supp. 232, 240-41 (D. Md. 1987); *United States v. $ 22, 991.00,* 227 F. Supp. 2d 1220, 1228 (S.D. Ala. 2002).   Loans and gifts are also legitimate sources not traceable to criminal activity. *United States v. Yukon Delta,* 774 F.2d 1432, 1435 (9th Cir. 1985); *United States v. One 1980 Chevrolet Blazer,* 572 F. Supp. 994, 997 (E.D. N.Y. 1983); *United States v. 1990 Chevrolet Silverado Pickup Truck*, 804 F. Supp. 777, 780 (W.D. N.C. 1992); *United States v. A Parcel of Land (92 Buena Vista Ave.),* 507 U.S. 111, 124 (1993); *United States v. One 1986 Nissan Maxima*, 895 F.2d 1063, 1064 (5th Cir. 1990).

Durr's uncontroverted testimony was that he received a loan from his father for $5,000.00 and that the rest of the money he saved from working during the course of his employment.   Mr. Durr's W-2 forms from 2007 to 2010 were admitted into evidence during the trial.   Mr. Durr's total income for those years was approximately $116,000.00.   With the loan of $5,000.000 from his father, and the income over the aforementioned years, Durr could have easily saved the money that was seized.   The government presented no evidence of the alleged controlled substance that the seized currency was used for or intended to be used for.   The evidence presented by the plaintiff was insufficient to forfeit Durr's seized money, and he properly challenged the sufficiency of plaintiff's evidence before the case was submitted for verdict pursuant to Fed. R. Civ. P. 50.

**B.**     **Totality of facts**

The order issued by the Trial Court listed seven (7) factors that it states demonstrated a substantial connection and relation between the Defendant Property and illegal drug activity. (Doc. 41, p. 5-6, paragraph 3).   The claimant will address each factor listed in chronological sequence as stated in the order.

**1.**     **The odor of marijuana that Deputy Crane detected when he approached the vehicle during the stop.**

Deputy Crane testified that he detected the odor of marijuana when he approached the vehicle.   Even though Deputy Crane testified to this, he found no marijuana in the car or on the person of Durr or Lett.   Additionally, Deputy Crane never conducted any field sobriety tests on the driver, Lett.   Clearly and without question, if Deputy Crane truly believed he smelled marijuana, he would have at the very least conducted field sobriety tests on Lett to determine if he was under the influence of marijuana before letting him back on the highway.

**2.**     **Durr's initial denial of currency being in the vehicle and his inconsistent behavior regarding the currency.**

There was a factual dispute regarding if Durr initially denied the currency in the vehicle. Moreover, the video presented by the government does not make clear if Durr initially denied the currency.   Durr disputes that his behavior was inconsistent regarding the seized currency.

**3.**     **Lett and Durr were traveling in a third-party's vehicle with a single vehicle key.**

Durr did not have a driver's license because of a DUI conviction; therefore, he could not drive.   Durr had no control over the vehicle Lett chose to drive, and this factor should not weigh against Durr. In fact, Durr was obeying the law by not driving a vehicle.

4.      **The amount of currency Durr was transporting and the manner in which it was bundled, bagged, and hidden under the passenger seat.**

The United States Court of Appeals for the Eleventh Circuit has stated that "a large amount of currency, in and of itself, is insufficient to establish probable cause [that the currency was used in an illegal drug transaction]." *United States v. $121,100 in United States Currency*, 999 F.2d 1503, 1507 (11th Cir. 1993). *See also United States v. $191,910 in United States Currency*, 16 F.3d 1051, 1072 (9th Cir. 1994) (superseded on other grounds by statute) ("[A]lthough we have considered the presence of a large amount of money, when accompanied by additional factors pointing to drug activity, to be evidence that the money was drug-related, we have never reached this conclusion when the sum of money involved was as small as the $15-20,000.00 involved here."); *United States v. One Lot of United States Currency Totaling $14,665*, 33 F. Supp. 2d 47, 49 (D. Mass. 1998) (stating that "[$14,665,] while not insubstantial, is quite a bit less than the sums often associated with drug transactions" and listing supporting cases).   The amount in the case at bar, $21, 175.00, is quite insubstantial when associated with alleged drug activity, and this factor should not have been weighed against Mr. Durr.

Durr testified that there was no particular reason that the money was wrapped in $1,000.00 bundles nor is it against the law to wrap money in bundles.   Clearly and without question, Durr could not have put all the currency in his pocket.

5.      **The odor of narcotics detected by the K-9 on both the currency and the vehicle.**

Numerous courts also discount the reliability and relevance of a canine alert, especially when there is little evidence beyond the alert.   *See United States v. $30,060.00*, 39 F.3d 1039, 1042 (9th Cir. 1994); *United States v. $49,576*.00 *U.S. Currency*, 116 F.3d 425, 427 (9th Cir. 1997).

"Cocaine can be easily transferred simply by shaking hands with someone who has handled the drug: a pharmacist, toxicologist, police officer, or drug trafficker." *In Re One Hundred Two Thousand Dollars: Cash Friendly Civil Forfeiture,* 1993 Utah L.Rev. 971, 979.   In fact, "a single bill used to snort cocaine or mingled with the drug transaction can contaminate an entire cash drawer."   Debbie M. Price, *Use of Drug-Sniffing Dogs Challenged: ACLU Backs Complaint by Men Whose Pocket Cash is Seized,* Wash. Post, May 6, 1990, at D1, D6 (citing study of Lee Hearn, chief toxicologist for the Dade County, Florida Medical Examiner's Office). Those bills go on to contaminate others as they pass through cash registers, wallets, and counting machines *$639,558.00,* 955 F.2d at 714 n. 2 (citing *Crimes and Chemical Analysis,* 243 Science 1554, 1555 (1989)); David B. Smith, *Prosecution and Defense of Forfeiture Cases,* ¶ 4.03 at 4-79 (1993). Given that an estimated one out of three circulating bills has been used in a drug transaction, currency contamination comes as no surprise.   *$639,558 in U.S. Currency,* 955 F.2d at 714 n. 2 (citing R. Siegel, Intoxication 293 (1989));   *see also* Jeff Brazil & Steve Barry, *You May Be Drug Free, But Is Your Money ? Cocaine is Found on the Cash of 8 Non-users.   The Test Suggests That a Drug Dog Would Detect Cocaine on Almost Anyone's Money*, Orlando Sentinel, June 15, 1992, at A6 (noting that eight samples of cash taken from a police chief, a circuit judge, a state senator, a mayor, a community college president, the Orlando Sentinel editor, a reverend, and a county chairman, six out of eight samples showed detectable amounts of cocaine that were "well within the range of a drug dog's detection ability").   *See Muhammed v.DEA*, *Asset Forfeiture Unit,* 92 F.3d 648, 653 (8th Cir. 1996) (concluding that a dog alert is virtually meaningless" because "an extremely high percentage of all cash in circulation in America today is contaminated with drug-residue"); *U.S. v.* $5,000, 40 F.3d 846, 849-50 (6th Cir.1994) (concluding that the evidentiary value of the narcotic dog's alert was "minimal," in part based on global contamination theory).

The fact that the K-9 alerted on the money should not have been a factor considered against Durr.   As numerous courts have stated, the vast majority of United States currency contains drug residue.   It should be noted that during his controlled test, the K-9 Officer only put Durr's money in the bags, and did not use other United States currency during the test. Additionally, the reason the K-9 could have alerted on the vehicle is because the currency was stored in the vehicle and had drug residue on it, and as previously stated, an extremely high percentage of United States currency contains such residue.

**6.    Durr's drug-related criminal history, coupled with Lett's prior drug conviction**

Durr admits that he pled guilty in the Circuit Court of Houston County, Alabama in 1994 for possession of a controlled substance and conspiracy to possess with intent to distribute cocaine base on or about June 5, 1996, in the United States District Court for the Middle District of Alabama.   His sentence in the state circuit court case was run concurrent with his federal sentence.   Durr was released from confinement on or about June 24, 2007 and placed on federal probation.

While on probation, Durr was given random drug tests and never failed a test. Additionally, since his release, Durr has not been arrested, more or less convicted for any illegal controlled substance offense in violation of any federal and/or state law. Durr was convicted over ten (10) years ago, and has not violated any controlled substance law since his conviction. The court considered his past convictions as a factor when deciding to forfeit his money, but Durr would assert that the opposite is true. Simplistically, Durr paid his debt to society, and has not made the same mistakes going forward in the future, and this factor should have been consider in his favor,

and not against him.

While it is true that Lett had a drug conviction, no evidence was presented that Durr has ever been involved in any alleged drug activities with Lett. Durr should not be punished for Lett's prior convictions.

**7.      Durr's inability to provide a legitimate source for the currency or plausible purpose for transporting it.**

Durr's uncontroverted testimony was that he received a loan from his father for $5,000.00 and that the rest of the money he saved from working on the course of his employment. Durr's W-2 forms from 2007 to 2010 were admitted into evidence during the trial. Durr's income for those years was approximately $116,000.00.   With the loan of $5,000.000 from his father, and the income over the aforementioned years, Durr could have easily saved the money that was seized from him.   Based on that evidence, Durr proved he had a legitimate source for the income as required under the preponderance of evidence standard.

Durr testified that he had a house in Atlanta that was being foreclosed upon by Bank of America.   To support this position at trial, he presented documents that verify his testimony. During his testimony, he stated that a Bank of America branch was not located in or near Dothan, Alabama.   According    to    Bank    of    America's    website,    Durr    is    correct.    See http://locators.bankofamerica.com/locator/locator/Alabama/branch_and_atm_locations/coverage. html.   Durr also testified that he kept his money at his house because of the bank failures.   Again, Durr is correct in that there have been multiple bank failures during the last few years of financial crisis. http://www.davemanuel.com/history-of-bank-failures-in-the-united-states.php.

On page 4 of the order, the Court noted that "neither his dad nor his grandmother testified

to corroborate his story.   Moreover, the driver of the vehicle, Lett, likewise did not testify to

corroborate the purpose of his trip."   (Doc. 41, p. 4).   The burden is on the government to

establish by a preponderance of the evidence that the property is subject to forfeiture, not Durr.

The government could have subpoenaed Durr's father, grandmother and Lett, but chose not to do

so.   The government presented no evidence that contradicted Durr's testimony, and could have

easily issued subpoenas for the aforementioned people, especially since the burden is upon them to

prove their case.

### C.   The court erred in allowing evidence of Durr's prior convictions to be admitted into evidence

Federal Rule of Evidence 609 states as follows:

> (a) In General.   The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:

> (1) For a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:

> (A) Must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and

> (B) Must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and

> (2) For any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving–or the witness's admitting–a dishonest act or false statement.

Fed. R. Evid. 609

Federal Rule of Evidence 403 states as follows:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

presenting cumulative evidence.

Fed. R. Evid. 403.

Rule 403 does not act to exclude any evidence that may be prejudicial, but only evidence the prejudice from which substantively outweighs its probative value. Prejudice within the meaning of Rule 403 involves identifying a special damage which the law finds impermissible. Charles E. Wagner, Federal Rules of Evidence Case Law Commentary, 145 (1996-97) (footnotes omitted).

### 1.    Nature of the Prior Convictions

Evidence of Durr's criminal convictions was of little probative value, if any. First, none of the prior convictions involved crimes of dishonesty or falsity. Second, the nature of Durr's convictions provides no insight into Durr's propensity to testify truthfully. "Evidence of a prior drug conviction is only minimally probative of a witness' character for truthfulness, if at all." *Dover-Hymon v. Southland Corp.*, 1993 WL 419705, * 6 (E.D. Pa. Sep. 27, 1993).

### 2.    Age on the Convictions

Few statutes recognize a time limit on impeachment by evidence of conviction. However, practical considerations of fairness and relevancy demand that some boundary be recognized. See Ladd, *Credibility Tests-Current Trends*, 89 U. Pa. L. Rev. 166, 176-177 (1940). According to Moore's Federal Rules Pamphlet:

> "Although convictions over ten years old generally do not have much probative value, there may be exceptional circumstances under which the conviction substantially bears on the credibility of the witness. Rather than exclude all convictions over 10 years old, the committee adopted an amendment in the form of a final clause to the section granting the court discretion to admit convictions over 10 years old, but only upon a determination by the court that the probative value

of the conviction supported by specific facts and circumstances, substantially outweighs its prejudicial effect."

"It is intended that convictions over 10 years old will be admitted very rarely and only in **exceptional** circumstances. [Emphasis added] The rules provide that the decision be supported by specific facts and circumstances thus requiring the court to make specific findings on the record as to the particular facts and circumstances it has considered in determining that the probative value of the conviction substantially outweighs its prejudicial impact."

James W. Moore, Moore's Federal Rules Pamphlet, Section 609.4[2][b], pp. 538-539 (Part 2: Evidence, 2008).

The drug convictions occurred in 1994 and 1996, more than ten (10) years ago. Durr admits he was released on or about June 24, 2007 for said offenses. Even based on the release date, the fact more than ten (10) years has passed weighed heavily against admittance. Accordingly, the significant age of these convictions argues against admissibility. *See Robinson v. Clemons*, 1998 WL 151285, at 3 (holding that although age of convictions diminishes its probative value as to veracity, it does not limit its prejudicial effect). Additionally, no exceptional circumstances were presented in this matter necessitating the admitting of the convictions.

### 3.    Importance of Credibility

Dealing with the importance of Durr's testimony, the prior convictions should not have been admitted. Durr testified and explained the source of the seized currency and why he had said currency in his possession. Durr's uncontroverted testimony cleared disputed the allegations made by the Plaintiff in their complaint. Additionally, there was no other means capable to introduce the evidence to be offered through his testimony. *See generally* Jack Weinstein & Margaret Berger, Weinstein's Federal Evidence S 609.04[2][a][v] (Joseph McLaughlin ed., 2d ed 1997) (explaining that a lack of other potential sources for the defendant's testimony increases the importance of the testimony). Consequently, this factor weighed against the admissibility in the

trial of this matter.

Further, the burden of demonstrating that the conviction survives the relevant test imposed by Rule 609 is on the party seeking to introduce the conviction.   *See, e.g., United States v. Cunningham*, 638 F.2d 696, 698 (4th Cir. 1981); *United States v. Hendershot*, 614 F.2d 648, 652-653 (9th Cir. 1980); *United States v. Mahone*, 537 F.2d 922, 929 (7th Cir.), *cert. denied*, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976).

> **D.    The trial court erred in allowing Durr's prior convictions to be admitted during the Plaintiff's case in-chief over objection.**

It is a long standing principle that a witness may not be impeached before has testified. *Bryant v. United States*, 120 F.2d 483 (5th Cir. 1941).   During their case in-chief, the plaintiff called a Drug Enforcement Agent (hereinafter referred to as DEA) to testify to Durr's prior convictions, even though Durr had not yet testified at trial.    Durr objected to this line of questioning and the court overruled this objection.   The Trial Court erred by allowing the admission of Durr's prior convictions before he testified.

## CONCLUSION

In a recent case, the United States Court of Appeals for the Eleventh Circuit   held   that "circumstantial evidence is one thing; speculation another."   *U.S. v. $125, 938.62,* 537 F.3d 1287, 1294 (11th Cir. 2008).   The allegations made regarding the currency and Durr are speculative in nature, and that will not support a forfeiture of his seized money.   For the foregoing reasons, Durr renews his challenge to the sufficiency of plaintiff's evidence.   In addition to his sufficiency challenge, Durr asserts that he established an affirmative defense by a preponderance of the evidence and is entitled to judgment as a matter of law.

Respectfully submitted,


/s Dustin J. Fowler
Dustin J. Fowler
One of the Attorneys for Claimant
P.O. Box 1193
Dothan, Al 36301
Telephone: (334) 793-3377
Facsimile: (334) 793-7756


## CERTIFICATE OF SERVICE

I hereby certify that on July 24th, 2012, I electronically filed the foregoing with Clerk of the Court using CM/ECF system which will send notification of such filing to the following:

Danial E. Bennett, Esq.
Assistant United States Attorney
Middle District of Georgia
P.O. Box 1702
Macon, Georgia 31202


/s Dustin J. Fowler
Dustin J. Fowler